IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| AMY McDILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:18cv597-MHT |
| | ) | (WO) |
| STATE OF ALABAMA BOARD OF | ) | |
| PARDONS AND PAROLES, et | ) | |
| al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

OPINON

Plaintiff Amy McDill, who is white, charges seven
defendants with workplace racial discrimination,
creating a racially hostile work environment, and
workplace retaliation based on her allegedly protected
conduct.  She names as defendants her employer, the
Alabama Board of Pardons and Paroles, and six current and
former board members and employees.  McDill brings her
claims against the board under Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e
to 2000e-17, and her claims against the board members and

employees, in their individual capacities, under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983.[1] She seeks punitive and compensatory damages, but no injunctive relief.[2] The court's jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5(f) (Title VII), and 28 U.S.C. § 1343 (civil rights).

---

1. Section 1981 does not provide a cause of action against state actors; rather, plaintiffs must use the remedial provisions of § 1983 to enforce against state actors the rights created by § 1981. *See Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000). McDill's complaint does not make entirely clear whether she intends to assert her § 1981 rights through § 1983, as she must, or to assert her § 1981 rights through that section alone, which she cannot. In an on-the-record conference call, however, McDill clarified that she intends to assert her § 1981 rights through § 1983.

2. McDill also brings claims under § 1983 against certain board members and employees in their official capacities. Those claims, however, do not lie, because § 1983 does not provide a cause of action for damages against state officials acting in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

This case is now before the court on the defendants' motion for summary judgment.  For the reasons that follow, the motion will be granted.

## I. Summary-Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... its case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... its case at trial.'"  *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)).  Once the party seeking summary judgment has informed the court of the basis for the motion, the burden shifts to the non-moving party to show that a genuine issue of material

3

fact exists.  *See id.*  In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  Factual Background

The facts, viewed in the light most favorable to McDill, are as follows:

McDill began working for the Pardons and Paroles Board as a probation and parole officer and rose through its ranks to become a district manager.  Throughout her tenure, she received positive performance reviews.

After the board promoted McDill to district manager, it promoted Erin Benford-Dick to serve as the officer in charge under McDill's supervision.  Benford-Dick's duties included approving timecards.  In her first weeks on the job, Benford-Dick noticed that McDill was altering a certain employee's timecards to make it appear that the employee was at work when, in fact, she was not.  McDill

**4**

instructed Benford-Dick to approve the timecards she had altered.   Initially, Benford-Dick complied because she was new to her job and assumed that she was "missing something."   Declaration of Erin Benford-Dick (Doc. 90-11) at ¶ 15.   Eventually, however, Benford-Dick reported McDill's conduct to Jerald Jackson, who had previously served as the officer in charge under McDill. Jackson agreed that McDill's conduct was concerning, and reported it to his supervisor, who, in turn reported it to McDill's supervisor, Stacey Brown. Brown investigated the manner, determined that McDill had intentionally falsified timecards, and filed a charge letter with board management recommending her termination.

Upon receiving notice of the charge against her, McDill requested a hearing.   She also filed a complaint against Brown, alleging that, on six occasions, Brown had failed to make edits to McDill's timecards that McDill had requested.   Brown was counseled, but not disciplined, by her supervisor, Darrell Morgan.

The board's executive director, Phil Bryant, arranged for a hearing on Brown's charge against McDill. Shortly before the hearing, Jackson reported to Brown that McDill had threatened to sue him unless he testified at the hearing that "she never instructed [him] to change employees' times." Memo from Jackson to Brown (Doc. 96-1) at 2.

Brown testified at the hearing. During a break, she notified the officer in charge of the hearing, Chris Norman, of Jackson's report, and discussed with Norman whether it would be possible to address McDill's alleged threat towards Jackson at the hearing, or whether it was necessary to file a second charge letter. Norman decided not to address the alleged threat at the hearing, because "McDill did not have proper notice to support adequate due process." Norman Declaration (Doc. 95-1) at ¶ 7.

Norman found McDill guilty of falsifying timecards, and submitted a report to Bryant recommending her termination. Bryant, in turn, recommended McDill's

6

termination to board members Cliff Walker, Lynn Head, and Terry Davis.

While Bryant's recommendation was pending, McDill filed a second complaint against Brown, alleging that she and another witness had given conflicting testimony during the hearing.  McDill also filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Brown, Norman, and Bryant, alleging that they had discriminated against her on the bases of race, color, and sex.

The day after McDill filed her EEOC complaint, Brown filed a second charge letter against McDill, alleging that she had threatened Jackson in order to influence his testimony.  Bryant arranged for another hearing, at which Norman served, again, as the officer in charge.  Norman found McDill not guilty of threatening Jackson.

Board members Walker, Head, and Davis terminated McDill, pursuant to Bryant's recommendation.

On the day of McDill's termination, Bryant stated in a district managers' meeting that he considered

employees' races and genders when assigning new state vehicles so as to ensure that vehicles were distributed fairly.  Later, a board employee filed two disciplinary charges against Bryant.  The first charge alleged that Bryant "illegally considered race and gender in assigning new state vehicles." Disciplinary Charge Letter (Doc. 102-4) at 3.  The second alleged that his management record established a practice of discrimination on the basis of race in the context of disciplinary actions. *Id.* at 4.

The Alabama Attorney General held a hearing on the disciplinary charges against Bryant, and found him guilty of the first charge, but not guilty of the second. Although it found him guilty of the first charge, the Attorney General determined that Bryant "did not consider race or sex [in assigning] vehicles for any bad faith reason," but only "to ensure 'fairness' when allocating Board resources."  Hearing Officer's Report in the Matter of Phil Bryant (Doc. 95-17) at 10.  Bryant received a demotion.

**8**

McDill, meanwhile, appealed her termination to the Alabama State Personnel Board.  An administrative law judge held a hearing, during which McDill testified, presented evidence, and called witnesses.  After considering McDill's evidence and evidence submitted of 34 occasions on which McDill had falsified time cards, the judge found that McDill's termination was warranted, and recommended to the Personnel Board that it be upheld. The Personnel Board, however, reinstated McDill, albeit without backpay, finding that she had not been properly trained on how to use the Pardons and Paroles Board's timecard system.  The evidentiary record is silent as to why the Personnel Board reinstated McDill but did not award her backpay.

Upon receiving notice of the Personnel Board's decision, Darrell Morgan recommended to the Pardons and Paroles Board's new executive director, Eddie Cook, that McDill be transferred to the Special Populations and Programs Division.  Cook agreed, and recommended the same to Walker, Head, and Davis, who proceeded to create a new

district manager position for McDill in the Special
Populations and Programs Division, rather than return her
to her previous district manager position, although it
remained open.  The Pardons and Paroles Board eventually
promoted a white employee to fill McDill's previous
district manager position.  McDill has not been promoted
since being reinstated.

McDill has named the following as defendants to this
lawsuit: the Pardons and Paroles Board; board employees
Brown, Bryant, and Norman; and board members Walker,
Head, and Davis.  Brown, Bryant, Norman, Walker, and
Davis are African-American, and Head is white.


### III. Discussion

#### A. Discharge-Discrimination

McDill claims that the defendants terminated her
because she is white--the Pardons and Paroles Board in
violation of Title VII, and Brown, Bryant, Norman,
Walker, Head, and Davis in violation of § 1981.  Both
Title VII and § 1981 make it generally illegal for an

employer to discriminate against an employee because of the employee's race. *See* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981.

For purposes of summary judgment in employment discrimination cases, the relative burdens of production and proof shift according to the kind of evidence proffered by the plaintiff to show discriminatory intent. If the plaintiff offers direct evidence, then the defendant must prove by a preponderance of the evidence that the same employment decision would have been made regardless of discriminatory intent. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). If, instead, the plaintiff offers circumstantial evidence, the plaintiff must generally proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Standard,* 161 F.3d at 1331. The first step of that framework requires the plaintiff to establish a prima-facie case of discrimination. *See id.* If she succeeds in doing so, the defendant must respond with a

11

legitimate, nondiscriminatory reason for the adverse employment decision, which the plaintiff must finally discredit as pretextual.[3] *See id*.

### i. Direct Evidence

Direct evidence of discrimination is "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* at 1330. "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[,] constitute direct evidence of discrimination." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)) (internal alteration omitted).

---

3. This court has previously questioned whether it is rational, and indeed possible, to distinguish between direct and circumstantial evidence in the context of employment discrimination claims. *See Hearn v. General Elec. Co.*, 927 F. Supp. 1486, 1497-99 (M.D. Ala. 1996) (Thompson, J.).

McDill offers the following as "direct evidence" of discrimination:

- Several non-white employees who, according to McDill, engaged in misconduct, were not terminated;

- Bryant stated that he took race into consideration when issuing vehicles; and

- McDill did not receive a new work vehicle.

None of these pieces of evidence, however, establishes the existence of discriminatory intent behind the defendants' decision to terminate McDill's employment absent inference or presumption. Evidence of employment decisions regarding employees other than the plaintiff is quintessential circumstantial evidence, *see Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003); it may establish discriminatory intent behind the employment decision affecting the plaintiff, but only by inference. Evidence of remarks unrelated to the decision-making process is also, by definition, circumstantial. *See Standard*, 161 F.3d at 1330

13

("[R]emarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Here, for instance, to find discriminatory intent on the basis of Bryant's statement that he took race into consideration when issuing vehicles, the factfinder would have to infer that Bryant also took race into consideration when deciding whether to recommend McDill's termination.  Likewise, to find discriminatory intent on the basis that Bryant did not issue McDill a new vehicle, the factfinder would have to make not one, but two inferences:  that Bryant did not issue McDill a new vehicle because she is white, and that he took race into account in a similar manner when deciding whether to recommend her termination.

### ii.  Circumstantial Evidence

To establish a prima-facie case, and thereby satisfy the first step of the *McDonnell Douglas* burden-shifting framework, a plaintiff bringing a discharge-discrimination claim based on circumstantial

evidence may show the following elements : (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she was discharged from that position; and (4) that she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. *See Maynard*, 342 F.3d at 1289 (citing *McDonnell Douglas*, 411 U.S. at 802).

The parties do not dispute that McDill has demonstrated the first three of these elements. They disagree, however, as to whether she has demonstrated the fourth.

Because McDill was replaced by a white person, and therefore cannot claim to have been replaced by someone outside her protected class, the parties' disagreement focuses on the question of whether McDill has identified a similarly situated individual outside of her protected class whom the defendants treated more favorably than they did her. A similarly situated individual, for the purposes of establishing a prima-facie case of

15

discharge-discrimination, is one who is "similarly situated [to the plaintiff] in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). Ordinarily, such an individual (1) will have engaged in the same alleged misconduct for which the plaintiff was terminated, (2) will have been subject to the same employment policies, guidelines, or rules as the plaintiff, (3) will have been under the jurisdiction of the same supervisor as the plaintiff, and (4) will share the plaintiff's employment or disciplinary history. *See id.* at 1227-28.

McDill contends that the following individuals, all of whom are African-American, were similarly situated to her, and yet received more favorable treatment:

- Brown, who, according to McDill, failed to make six edits to McDill's timecard after McDill requested that she make them, for which she was counseled but not disciplined;

- Reydonya Richardson, a district manager, who, according to McDill, (1) occasionally worked from the wrong office, and was directed not to do so, but not disciplined; (2) supervised a secretary who was caught stealing; and (3) missed punches on

her timecards and made many edits to her timecards, for which she was not disciplined;

- Roderick Chambers, a manager in the training division who was found guilty, twice, of using a state vehicle for personal business, for which he was suspended;

- Jackson, a parole officer who occasionally made edits to his subordinates' timecards, which McDill suggests may have been improper, but for which he was not disciplined;

- Benford-Dick, who approved certain timecards that she suspected McDill of falsifying, later reported McDill, and was not disciplined.

The court notes, first, that there is no evidence that any of the employee or board-member defendants was involved in the decisions regarding discipline for Brown, Richardson, Jackson, or Benford-Dick, none of whom, with the exception of Richardson, shared an immediate supervisor with McDill.[4]  Brown's immediate supervisor was Darrell Morgan, who is not a defendant in this

_____

4. There is no direct evidence that any of the employee or board-member defendants was involved in the decision regarding discipline for Chambers, either. Nevertheless, the court is willing to infer, at the summary-judgment stage, that Bryant and the board members were required to review the decision to suspend Chambers.

lawsuit.  It was he who declined to recommend that she be disciplined for failing to make alterations to McDill's timecards, and there is no evidence that any of the individual employee defendants reviewed that decision.  Richardson's immediate supervisors were Brown and Morgan.  Morgan made the decision not to punish Richardson for working from the wrong office and missing punches on her timecards, and there is no evidence that any of the employee or board-member defendants reviewed that decision.  Jackson's immediate supervisor was a manager named Kristi McCay, who is not a defendant in this lawsuit.  There is no evidence that any of the employee or board-member defendants reviewed her decision not to punish Jackson for editing timecards.  Finally Benford-Dick's immediate supervisor was McDill herself, and there is no evidence that any of the employee or board-member defendants reviewed McDill's decision not to punish Benford-Dick for making the edits to timecards that she had requested.  Absent evidence that the employee or board-member defendants were involved in

decisions regarding discipline for these individuals, no fact-finder could infer discrimination on the part of the employee or board-member defendants from the fact that these individuals were not terminated.

Moreover, none of the individuals whom McDill contends were similarly situated to her engaged in misconduct comparable to that for which the Pardons and Paroles Board terminated her. The board terminated McDill because it found that she had purposefully falsified timecards on at least 34 occasions. Brown, by contrast, did not purposefully falsify any timecards; rather, she neglected to make, at most, six changes to McDill's timecards. Although Benford-Dick approved certain timecards that she suspected McDill of falsifying, she later testified, under oath, that she did so only "[b]ecause [McDill] was my supervisor and I was new to the position and I thought I was missing something." Declaration of Erin Benford-Dick (Doc. 90-11) at ¶ 15. Furthermore, Benford-Dick later reported McDill's misconduct. While Jackson and Richardson made

edits to timecards, the record is devoid of any evidence that those edits were improper.  And to the extent that McDill alleges that Richardson worked from the wrong office and supervised a secretary who was caught stealing, that misconduct is not even remotely comparable to McDill's.  Nor is Chambers's misuse of a state vehicle.

That McDill is unable to establish a prima-facie case by producing evidence of similar comparators is not, however, dispositive, because "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (on remand from the en banc court) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  Rather, the plaintiff may still "survive summary judgment if he or she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Id.* (internal alterations and quotation marks omitted).  In

other words, a plaintiff may still survive summary judgment if she "presents ... 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.'" *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (footnote omitted)), and a "convincing mosaic" may be shown by evidence that demonstrates, among other things, "that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185.

The court will therefore proceed to consider the second and third steps of the *McDonnell Douglas* burden-shifting framework--namely, whether the defendants have offered a legitimate, nondiscriminatory reason for terminating McDill, and whether McDill has offered evidence from which a reasonable fact-finder might find that the proffered reason is pretextual.

The defendants have offered McDill's alleged falsification of timecards as a legitimate,

nondiscriminatory reason for terminating her. McDill offers the following as evidence of pretext:

- During Bryant's tenure as executive director, the number of Pardons and Paroles Board employees increased by 78, with 71.79 % of that increase attributed to an increase in African-American employees, and the racial makeup of the board's division directors went from 80 % white and 20 % African-American to 40 % white and 60 % African-American;

- During Bryant's tenure as executive director, at least ten white employees received disciplinary sanctions of some sort, while no African-American employees were terminated, including Brown, Richardson, Chambers, Jackson, and Benford-Dick;

- During Bryant's tenure as executive director, four board employees, three white and one Native American, filed EEOC complaints alleging that they had been denied promotions because of their race;

- During the hearing on McDill's alleged falsification of timecards, Brown and Norman discussed the necessity of filing an additional charge letter against McDill;

- Bryant stated that he took race into consideration when issuing vehicles, and McDill did not receive a new work vehicle;

- Brown did not promote two white employees whom McDill recommended for promotion;

- McDill successfully appealed her termination.

None of this evidence, however, considered individually or as a whole, is sufficient to allow a reasonable fact-finder to determine that McDill was the victim of discrimination.  To begin with, there is no evidence suggesting that Norman, Walker, Head, or Davis ever considered McDill's race, or any employee's race, in making employment decisions.  Walker, Head, and Davis are implicated in the events giving rise to McDill's claims only by their act of approving her termination upon Bryant's recommendation, and Norman is implicated in the events giving rise to McDill's claims only by his acts of serving as the officer of the disciplinary hearings regarding McDill, discussing with Brown the filing of additional charges against McDill, and finding McDill guilty of falsifying timecards and recommending her termination.  The court will therefore grant summary judgment in favor of Norman, Walker, Head, and Davis on McDill's discharge-discrimination claim.

Nor is there evidence suggesting that Brown, Bryant, or the Pardons and Paroles Board discriminated against

McDill. That the board hired and promoted more African-American employees than white employees during Bryant's tenure is not probative of discrimination in hiring (let alone firing) because there is no evidence concerning the number of African-American and white employees who applied and were eligible for hiring and promotion, and therefore no basis on which to conclude that the board was more likely to hire or promote eligible African-American employees than eligible white employees. *Cf. Brown v. American Hondo Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991) ("To say that very few blacks have been selected by Honda does not say a great deal about Honda's practices unless we know how many blacks have applied and failed and compare that to the success rate of equally qualified white applicants."). Likewise, that at least ten white employees received disciplinary sanctions of some sort during Bryant's tenure, while no African-American employees were terminated (including Brown, Richardson, Chambers, Jackson, and Benford-Dick), is not probative of

24

discrimination because there is no evidence to establish that white employees and African-American employees received different disciplinary sanctions for similar conduct by the same supervisor.  The fact that four board employees previously filed EEOC complaints is also immaterial, because there is no evidence that those complaints were successful, or that the decisionmakers who declined to promote the four complainants were involved in the decision to terminate McDill's employment.

That Bryant stated that he considered race in assigning vehicles and that McDill did not receive a new work vehicle is not probative of discrimination against McDill because, even were the court to find that Bryant considered race in assigning vehicles and did not assigned McDill a new work vehicle because she is white, that fact would not rebut the perfectly acceptable, race-neutral justification for her termination: that Bryant believed she had purposely falsified her

subordinate's timecards.    That   the   timecards   were
inaccurate is undisputed.

That Brown did not promote the two white employees
whom  McDill  recommended  for  promotion  is  also  not
probative of discrimination because she had good reason
for doing so:  the two employees had disciplinary records
that Bryant found concerning.  And there is no evidence
that race was factor in Brown's decision.

Moreover, McDill cannot establish that she was the
victim of discrimination by relying on the fact that she
successfully appealed her termination.  An employer is
free to fire an employee "for a good reason, a bad reason,
a reason based on erroneous facts, or for no reason at
all, as long as its action is not for a discriminatory
reason."  *Nix v. WLCY Radio/Rahall Communications*, 738
F.2d 1181, 1187 (11th Cir. 1984); *see also Damon v.
Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363
n.3 (11th Cir. 1999) ("An employer who fires an employee
under  the  mistaken  but  honest  impression  that  the
employee  violated  a  work  rule  is  not  liable  for

26

discriminatory conduct."). The crucial question is therefore whether McDill has produced evidence that the defendants terminated her because of her race.

For several reasons, the decision of the Personnel Board to reinstate McDill does not constitute evidence that the defendants terminated her because of her race. First, the decision was not a total win for McDill. The Personnel Board declined to give her back pay, thereby not totally exonerating her for her conduct. Second, as explained above, the evidence indicates that the Pardons and Paroles Board terminated her because it believed that she had intentionally falsified timecards. Nothing in the record calls the sincerity of that belief into question, let alone suggests that the board fabricated a reason for firing McDill in order to disguise a racially discriminatory motive. The court will therefore grant summary judgment in favor of all of the defendants on McDill's discharge-discrimination claim.

Finally, other important factors stand out regarding McDill's discrimination claim. First, the decision to

27

terminate her went through a number of different administrative levels, with evidentiary hearings, and involved many different people. Second, in her complaint, she seeks only damages: backpay and other compensatory damages as well as punitive damages. And, third, she has sued not only the Pardons and Paroles Board but six individuals, and, to recover damages from each of these individual she must show not only that each of them racially discriminated against her but that each individual's conduct led to her damages; the determination decision was diffuse. However, the record reflects that no one defendant employee alone could have achieved her termination and thus brought about her damages. And there are the intervening events that both the Pardons and Paroles Board and the Personnel Board reviewed the evidence and assessed the actions of the employee defendants, with the Pardons and Paroles Board finding that termination was warranted, and the Personnel Board finding that she was not entitled to backpay. And

the record does not support the conclusion that race played any role in the decisions of these two boards.

## B. Hostile Work Environment

McDill claims that the defendants subjected her to a racially hostile work environment--again, the Pardons and Paroles Board in violation of Title VII, and Brown, Bryant, Norman, Walker, Head, and Davis in violation of § 1981.

A hostile work environment claim is predicated on workplace harassment; it requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fernandez*, 961 F.3d at 1152 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To survive summary judgment, a plaintiff bringing such a claim must present sufficient evidence for a reasonable fact-finder to find: (1) that the plaintiff belongs to a protected group; (2)

that she suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the defendant is responsible for that environment under a theory of either direct liability or vicarious liability. *See id.* at 1153.

McDill alleges that the defendants subjected her to a hostile work environment in the following manner:

- Brown did not promote two white employees whom McDill recommended for promotion;

- Brown, with Bryant's approval, twice recommended McDill's termination;

- Brown and Norman discussed bringing additional charges against McDill during a break in the hearing on McDill's alleged falsification of timecards;

- Bryant stated that he took race into consideration when issuing vehicles;

- Brown was not punished for failing to make changes to McDill's timecard;

- McDill was not returned to the position of district
  manager upon her reinstatement;

- McDill was not promoted after her reinstatement.[5]

There is no evidence that any of these actions were motivated by McDill's race.  As explained above, Brown chose not to promote the two employees whom McDill recommended because she found their disciplinary histories concerning, and she recommended McDill's termination because she suspected McDill of falsifying timecards and threatening Jackson.  There is no evidence that Brown and Norman ever discussed McDill's race during the hearing regarding her alleged falsification of

_____

5.  McDill also makes the following unsupported allegations in her complaint:  (1) Brown provided false testimony at her hearing; (2) Bryant considered race in decisions regarding hiring and promotion; and (3) white employees under Brown's and Bryant' s supervision were consistently assigned higher caseloads than Black employees.  McDill cannot rely on these unsupported allegations, however, to defeat summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials in [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

timecards.   Bryant's statement about considering race when assigning vehicles had nothing to do with McDill. None of the defendants were involved in the decision not to punish Brown for failing to make edits to McDill's timecard, and in any case Brown's alleged misconduct is not similar to McDill's.   There is no evidence that Walker, Head, or Davis, who were the only defendants involved in the decision to create a new district manager position for McDill in the Special Populations and Programs Division, rather than return her to her previous district manager position, considered her race in doing so.  And there is no evidence as to who made the decision not to promote McDill, or whether that decision was based on race.

Moreover, none of the conduct that McDill alleges constitutes harassment, let alone pervasive harassment. *See McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008) (allegations that "harsher discipline was received by black employees, and complaints of discrimination were subject to retaliation and not investigated," concerned

"**patterns of discrimination practiced against black employees, which constitute discrete acts that must be challenged as separate statutory discrimination and retaliation claims [and not as a] hostile work environment claim that centers on discriminatory intimidation, ridicule, and insult") (internal citations and quotation marks omitted). The court will therefore grant summary judgment to the defendants on McDill's claims of creating a racially hostile work environment.**

## C. Retaliation

**McDill claims that the defendants retaliated against her because she engaged in protected conduct--as stated, the board in violation of Title VII, and Brown, Bryant, Norman, Walker, Head, and Davis in violation of § 1981.**

**Claims of retaliation under Title VII and § 1981 are governed by the familiar _McDonnell Douglas_ burden-shifting framework. _See Tolar v. Bradley Arant Boult Commings, LLP_, 997 F.3d 1280, 1289 (11th Cir. 2021); _Bryant v. Jones_, 575 F.3d 1281, 1307 (11th Cir.**

33

2009).  To survive summary judgment, the plaintiff must establish a prima-facie case of illegal retaliation by showing (1) that she engaged in statutorily protected activity, (2) that she suffered a materially adverse action, and (3) that there was some causal relation between the two events.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  The burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for the challenged employment action.  *See Tolar*, 997 F.3d at 1289.  If that burden is met, the plaintiff bears the ultimate burden of proving that the reason offered by the defendant is pretextual.  *See id.*

McDill claims that the defendants retaliated against her on two occasions.  First, she claims that Brown retaliated against her by filing a discharge letter alleging that she had threatened Jackson in order to influence his testimony, in response to McDill's act of filing a complaint against Brown, alleging that Brown and

another witness gave conflicting testimony during the hearing regarding McDill's alleged falsification of timecards. Second, McDill claims that Bryant retaliated against her by appointing Norman as the hearing officer at the hearing regarding her alleged threat to Jackson, in response to McDill's act of filing an EEOC complaint against Brown, Norman, and Bryant, alleging that they had discriminated against her on the basis of her race and sex.

The court notes, at the outset, that McDill's claims of retaliation do not implicate the Pardons and Paroles Board, Norman, Walker, Head, or Davis. It will therefore grant summary judgment in favor of these defendants on McDill's claims of retaliation.

With regard to McDill's claims of retaliation against Brown and Bryant, McDill has failed to establish a prima-facie case. As to her first claim of retaliation, McDill has failed to establish that she engaged in statutorily protected activity. Statutorily protected activity, in context of a retaliation claim brought under

§ 1981, consists only of activity protected by § 1981. *See Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1311 (11th Cir. 2010).  An employee's complaint to an employer can constitute such activity, but only if it alleges unlawful employment discrimination.  *See Bailey v. DAS North America, Inc.*, 473 F. Supp. 3d 1310, 1332 (M.D. Ala. 2020) (Huffaker, J.); *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010); *Demers v. Adams Homes, Inc.*, 321 F. App'x 847, 852) (11th Cir. 2009); *Jeronimus v. Polk Cty. Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005).  McDill has presented no evidence that her complaint against Brown alleged, or indeed made any mention of, unlawful employment discrimination.  Rather, the evidence is that the complaint concerned the accuracy of Brown's testimony at the hearing regarding McDill's alleged falsification of timecards.

As to her second claim, McDill has failed to establish that she suffered a materially adverse action. A materially adverse action, in the context of a

retaliation claim, is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 67 (internal quotation marks omitted). Here, McDill alleges that she suffered a material adverse action when the defendants appointed Norman as the hearing officer at the hearing regarding her alleged threat to Jackson. She has failed to present any evidence, however, to show that the act of appointing Norman as her hearing officer would have dissuaded a reasonable worker in her position from making or supporting a charge of discrimination. There is no evidence, for instance, that Norman harbored any animus towards McDill, or that he was otherwise inclined to treat her unfairly, or, indeed, that McDill suffered any negative consequences from his appointment.

Moreover, with regard to both claims, McDill has failed to establish a causal connection between her allegedly protected activity and her termination. To establish a causal connection, the plaintiff must show "that the protected activity and the adverse action were

37

not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). There are, however, two exceptions to this rule:  temporal proximity alone will not suffice to create a genuine issue of fact as to causal connection where (1) "there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct," *id.*, and (2) where "an employer contemplates an adverse employment action before an employee engages in protected activity," *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

As to her first claim, McDill attempts to establish a causal connection solely on the basis of temporal proximity; she argues that because Brown filed her discharge letter one day after McDill filed her

complaint, the two events were causally connected.  Here, however, both exceptions to the rule that temporal proximity alone may establish causal connection are met: Brown asserts in a signed declaration that she had no knowledge of McDill's complaint at the time she filed the second charge letter against McDill, *see* Brown Declaration (Doc. 90-9) at ¶ 26, and that she contemplated filing the second discharge letter before McDill made her complaint, *see id.* at ¶¶ 18, 25.  McDill does not contest Brown's declaration, and has therefore failed to present sufficient evidence to establish a causal connection.  *See Brungart*, 231 F.3d at 799.

As to her second claim, McDill has presented no evidence whatsoever to suggest that Bryant's act of appointing Norman as hearing officer was related to McDill's act of filing an EEOC complaint.  The court will therefore grant summary judgment to all of the defendants on McDill's claims of retaliation.

39

\*\*\*

An appropriate judgment will be entered.

DONE, this the 28th day of February, 2022.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE